# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN BRYANT,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| v. | : | No. 20-_____ |
| **UNITED STATES OF AMERICA,** | : | |
| Defendant. | : | |

## COMPLAINT

### I.  PRELIMINARY STATEMENT

1. Plaintiff John Bryant brings this lawsuit against Defendant United States of America under the Federal Tort Claims Act in relation to the misconduct of Federal Bureau of Prisons ("BOP") employees at the Federal Correctional Institution at Allenwood who failed to protect him from a violent assault by other prisoners despite open and obvious reasons to believe that Mr. Bryant would be targeted by other prisoners.

2. As a result of their actions and inactions, Mr. Bryant suffered serious physical and emotional trauma, some or all of which may be permanent.  In this suit, Mr. Bryant seeks compensation for his substantial harms and losses.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331, 1346(b).

4. On or about July 10, 2019, Mr. Bryant submitted a timely Administrative Tort Claim to the BOP. In correspondence dated January 10, 2020, the BOP denied the claim. Mr. Bryant has, therefore, exhausted administrative remedies.

5. Venue is proper in this District under 28 U.S.C. § 1402(b) as the acts and omissions that are the subject of this Complaint occurred within the Middle District of Pennsylvania.

## III. PARTIES

6. Plaintiff John Bryant, aged 57, was at all times relevant to this Complaint incarcerated in BOP facilities, including FCI Allenwood ("Allenwood"). He is no longer incarcerated and presently resides in Richmond, Virginia.

7. Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

8. At all times relevant to this Complaint, all BOP personnel mentioned below, including Counselor D. Betzer, Correctional Officer Messersmith, and Correctional Officer Kohn, as well as other unnamed personnel, were employees of

BOP and Defendant United States of America and were acting within the scope and course of their employment.

## IV.  FACTS

9. Beginning in February 2011, Mr. Bryant was incarcerated in the BOP due to a conviction in the U.S. District Court for the Eastern District of Virginia.

10. In March 2017, Mr. Bryant was transferred to Allenwood.

11. On arrival, Mr. Bryant, who was 54 years old at the time, was placed in a six-man cell with five younger prisoners.

12. Mr. Bryant's cellmates smoked a synthetic marijuana known as "K-2" nearly every night.

13. In 2016, Mr. Bryant had been diagnosed with atrial fibrillation, a condition that was aggravated by secondhand smoke and which, therefore, made Mr. Bryant particularly sensitive to his cellmates' habit.

14. Mr. Bryant warned his cellmates that he would not lie to prison staff on their behalf if staff inquired about or discovered contraband in the cell.

15. Mr. Bryant's cellmates began threatening and harassing him. The threats stemmed in large part from Mr. Bryant's warning that he would not cooperate with his cellmates' illegal activity.

16. The threats assumed a violent and sexual nature and made Mr. Bryant fear for his safety.

17. Beginning in mid-June, 2017, Mr. Bryant had repeated conversations with his counselor, Counselor D. Betzer, concerning his cellmates' repeated and credible threats to his safety.

18. Mr. Bryant requested that Betzer move him to a different cell, but Betzer denied the request.

19. Betzer explained that there was no available spot within the unit where Bryant could be moved.

20. Mr. Bryant requested to move to a different unit, but Counselor Betzer once again denied his request.

21. In the month following Mr. Bryant's multiple requests to be moved out of his cell, the threats grew in severity and impunity.

22. In July of 2017, a man with the last name Smith, one of Mr. Bryant's cellmates, complained to Betzer that she should remove Mr. Bryant from the cell.

23. Smith aggressively argued with Betzer, and, during the course of that argument, threatened that he would physically and sexually assault Mr. Bryant if she refused to move Mr. Bryant to a different cell.

24. Smith left the office and returned shortly thereafter with a water bottle full of urine. He poured the urine under Betzer's door.

25. When Betzer returned to her office, she discovered the urine and placed the unit on lockdown.

26. Surveillance footage showed Smith pouring the urine under Betzer's door, and Smith was placed in the Special Housing Unit.

27. During the next several months, Mr. Bryant's cellmates continued to threaten him with violence.

28. Mr. Bryant, likewise, continued to inform Counselor Betzer of the threats and of the danger he believed his cellmates presented to his safety.

29. On September 21, 2017, around 7:20 p.m., Correctional Officer Kohn approached Mr. Bryant outside of the unit and informed him that his cell smelled of smoke.

30. Later that night, Officer Kohn asked for Mr. Bryant's cooperation in her investigation into contraband K-2 in Mr. Bryant's cell.

31. Mr. Bryant agreed to cooperate, and he did so.

32. As a result of Mr. Bryant's actions, officers caught three of Mr. Bryant's cellmates smoking.

33. The officers took the cellmates to the Special Housing Unit to await disciplinary charges.

34. Between September 21 and September 27, 2017, the cellmates who were not taken to the Special Housing Unit continued to threaten Mr. Bryant.

35. The threats increased in frequency and in specificity about the violence they would use to harm Mr. Bryant.

36. Mr. Bryant had multiple conversations with Betzer and Correctional Officer Messersmith about the threats in which he requested, yet again, that they move him to a new location.

37. Betzer, Messersmith, and other officers were, based on Mr. Bryant's complaints, aware that Mr. Bryant was at significant risk of harm and that it was Mr. Bryant's cellmates who posed this risk to Mr. Bryant.

38. Despite this knowledge, Betzer, Messersmith, and other officers deliberately, or, at a minimum, recklessly, ignored the risk to Mr. Bryant's safety and refused to address his complaints and change his cell or unit assignment.

39. Betzer, Messersmith, and other officers were, therefore, deliberately indifferent to a substantial risk of serious harm to Mr. Bryant in violation of Mr. Bryant's rights under the Eighth Amendment to the U.S. Constitution.

40. On September 27 around 7:15 p.m., Carlos Cunningham, one of Mr. Bryant's cellmates, initiated an argument with Mr. Bryant in their cell.

41. Fearing an attack, Mr. Bryant left the cell and stood directly in front of the officer station in order to make any confrontation visible by prison staff.

42. There were, however, no officers in the officer station.

43. Cunningham followed Bryant to the station and attacked him using a hard object to strike Mr. Bryant on multiple locations on his body, including his left eye.

44. Cunningham was high on K-2 at the time of the assault.

45. Mr. Bryant was seriously injured in the assault and required immediate medical attention.

46. He bled profusely from his eye and could not see.

47. Prison staff brought him to the emergency room of a local hospital around 10 p.m. that night. Mr. Bryant was diagnosed with a serious injury to his eye.

48. Following this initial medical treatment, Mr. Bryant was returned to the facility and housed in the Special Housing Unit for protection from his cellmates.

49. On October 3, 2017, Betzer visited Mr. Bryant in his cell.

50. Upon seeing his eye, Betzer gasped and covered her mouth. She apologized for ignoring Mr. Bryant's requests to move cells and said that she should have moved him.

51. Following the assault, Mr. Bryant received a disciplinary violation on his prison record.

52. On October 30, 2017, the violation was removed from his prison disciplinary record because officers confirmed that he was attacked as a result of his cooperation with Officer Kohn's investigation.

53. Despite his protests, Mr. Bryant was removed from the Special Housing Unit and returned to the same cell where he had been previously threatened leading up to the assault.

54. The threats promptly resumed, and prison staff returned Mr. Bryant to the Special Housing Unit within approximately fifteen minutes.

55. Bryant remained in Allenwood's Special Housing Unit from October 30, 2017 until January 2, 2018. On that date, he was transferred to the Federal Correctional Institution at Butner for treatment of his eye injuries at the Federal Medical Center at Butner.

56. As a result of the actions and inactions of the BOP employees described above, Mr. Bryant suffered, and continues to suffer, daily headaches and dizziness as a result of the assault. He has a cataract in his eye and experiences difficulty keeping his eyelid open and moving his neck. His eyesight remains blurry, a consequence which is likely to be permanent. He also suffers from severe emotional trauma as a result of the assault and the fact that his frequent complaints about the danger to his safety were ignored.

## V.  CAUSES OF ACTION

### Count I
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligence

57. The BOP employees referenced above, including but not limited to Counselor D. Betzer, Correctional Officer Messersmith, and Correctional Officer Kohn, owed a duty to plaintiff, breached their duty to plaintiff, and, as such, were direct and proximate causes and substantial factors in bringing about plaintiff's damages outlined above.

58. The actions of the BOP employees referenced above, including but not limited to Counselor D. Betzer, Correctional Officer Messersmith, and Correctional Officer Kohn constitute the tort of negligence under the laws of the Commonwealth of Pennsylvania.

59. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

### Count II
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligent Infliction of Emotional Distress

60. The BOP employees referenced above, including Counselor D. Betzer, Correctional Officer Messersmith, and Correctional Officer Kohn, owed a duty to plaintiff, breached that duty, and caused plaintiff to suffer severe emotional distress, which was the direct and proximate result of their breach of duty.

61. The actions of the BOP employees referenced above, including but not limited to Counselor D. Betzer, Correctional Officer Messersmith, and Correctional Officer Kohn constitute the tort of negligent infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

62. Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

**Wherefore**, plaintiff John Bryant respectfully requests:

A. Compensatory damages;

B. Reasonable attorneys' fees and costs;

C. Such other and further relief deemed just and appropriate.

/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING,
  FEINBERG & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
(215) 925-5365 (fax)
jfeinberg@krlawphila.com

*Counsel for Plaintiff*